[Cite as *In re Guardianship of Shriver*, 2015-Ohio-5172.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| IN RE: GUARDIANSHIP OF | : | |
| HOWARD A. SHRIVER | : | Case No. 14CA32 |
| | : | |
| | : | <u>DECISION AND</u> |
| | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| | : | RELEASED: 12/04/2015 |

APPEARANCES:

William L. Burton, Burton Law Office, LLC, Marietta, Ohio, for appellant H. Randall Shriver.

Jerry A. Brock and Matthew C. Carlisle, Theisen Brock, LPA, Marietta, Ohio, for appellee Howard A. Shriver.

Hoover, P.J.

{¶1} H. Randall Shriver ("appellant") appeals the decision and judgment entry of the Washington County Common Pleas Court, Probate Division, denying his application for appointment as guardian of his father, Howard A. Shriver ("appellee"), and finding that appellee is not incompetent. Initially, appellant contends that the trial court erred by failing to include findings supporting its decision. However, because appellant failed to request findings of fact and conclusions of law in accordance with Civ.R. 52, he cannot complain on appeal about the trial court's lack of explicit findings. In other words, appellant waived the right to raise this issue on appeal.

{¶2} Appellant also contends that the trial court's finding that appellee is not incompetent is against the manifest weight of the evidence. However, several witnesses, including an expert, testified that appellee is capable of taking proper care of himself and his

property. Appellee's own testimony bolsters these conclusions. Thus, because some competent, credible evidence supports the trial court's finding regarding competency, its decision was not against the manifest weight of the evidence.

{¶3}   Because appellant's arguments lack merit, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶4}   Appellee is 97 years old and lives alone at an assisted living facility in Marietta, Ohio. Since his wife died in 1997, appellee has been involved in a relationship with Betty Dicklich, age 89 years old.

{¶5}   After suspicions arose amongst appellee's adult children and at least one financial institution that Dicklich may have been financially exploiting appellee, appellant, appellee's adult son, filed an Application for Appointment of Guardian of Alleged Incompetent. Appellant requested that he be appointed guardian of appellee's person and estate.

{¶6}   The application was supported by the report of John L. Tilley, a clinical and forensic psychologist. Tilley's report opined that appellee suffered from depression and major neurocognitive disorder, which affects his attention, memory, executive functioning, and social cognition. Ultimately, Tilley's report opined that a guardianship should be established.

{¶7}   The trial court, following the initiation of the guardianship proceedings, appointed Melody Zimmerman as investigator for the court. The trial court then ordered that she investigate appellee's circumstances and file a report detailing, inter alia, the physical and mental condition of appellee. Furthermore, the trial court ordered that Zimmerman provide a recommendation regarding the necessity for a guardianship or a less restrictive alternative. A short time later, Zimmerman filed her report with the trial court. In her report, Zimmerman noted that appellee

understood the concept of guardianship and opposed that a guardian be appointed. Zimmerman noted no impairments involving appellee's orientation, speech, thought process, affect, concentration, comprehension, or judgment. However, Zimmerman did indicate impairment involving appellee's memory. In addition, Zimmerman indicated that appellee was capable of performing all activities and instrumental activities of daily living, with the exception of driving. Zimmerman's report also noted that inconsistencies existed between her findings and the Tilley report, specifically stating that on the two days that she interviewed appellee, he appeared to be alert, well oriented, interactive, and very knowledgeable. Ultimately, Zimmerman, in her report, recommended a limited-guardianship to "[a]ssist [appellee] in paying his bills and making financial decisions."

{¶8}    After conducting a hearing on the matter, which included testimony from appellee and several other witnesses, the trial court entered a decision and judgment entry finding appellee to be competent and denying the application. Appellant then filed a timely notice of appeal.

## II. Assignments of Error

{¶9}    Appellant sets forth two assignments of error for our review:

1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO MAKE FINDINGS SUPPORTING ITS DECISION[.]

2. THE TRIAL COURT COMMITTED REVERSIBLE ERROR CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL[.]

## III. Law and Analysis

### A. The Trial Court's Decision and Judgment Entry

{¶10}  In his first assignment of error, appellant contends that the trial court committed reversible error because the court failed to make any findings or offer any explanation for its decision. This argument is meritless.

{¶11}  Civ.R. 52 provides that "judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * *." Generally, the failure to request findings of fact and conclusions of law results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning an issue. *See Pawlus v. Bartrug*, 109 Ohio App.3d 796, 801, 673 N.E.2d 188 (9th Dist.1996); *Wangugi v. Wangugi*, 4th Dist. Ross No. 99CA2531, 2000 WL 377971, *5 (Apr. 12, 2000); *Ruby v. Ruby*, 5th Dist. Coshocton No. 99-CA-4, 1999 WL 668556, *2 (Aug. 11, 1999). "[W]hen a party does not request that the trial court make findings of fact and conclusions of law under Civ.R. 52, the reviewing court will presume that the trial court considered all the factors and all other relevant facts." *Fallang v. Fallang*, 109 Ohio App.3d 543, 549, 672 N.E.2d 730 (12th Dist.1996); *see also*, *In re Barnhart,* 4th Dist. Athens No. 02CA20, 2002-Ohio-6023, ¶ 23.

{¶12}  In the absence of findings of fact and conclusions of law, we must presume the trial court applied the law correctly and must affirm if there is some evidence in the record to support its judgment. *See, e.g.*, *Bugg v. Fancher,* 4th Dist. Highland No. 06CA12, 2007-Ohio-2019, ¶ 10, citing *Allstate Fin. Corp. v. Westfield Serv. Mgt. Co.*, 62 Ohio App.3d 657, 662, 577 N.E.2d 383 (12th Dist.1989). As the court explained in *Pettet v. Pettet*, 55 Ohio App.3d 128, 130, 562 N.E.2d 929 (5th Dist.1988):

> [W]hen separate facts are not requested by counsel and/or supplied by the court
> the challenger is not entitled to be elevated to a position superior to that he would
> have enjoyed had he made his request. Thus, if from an examination of the record

as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence.

The message is clear: If a party wishes to challenge the* * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already "uphill" burden of demonstrating error becomes an almost insurmountable "mountain."

*See also*, *Bugg* at ¶ 10*; McClead v. McClead,* 4th Dist. Washington No. 06CA67, 2007-Ohio-4624, ¶¶ 24-26; *Internatl. Converter, Inc. v. Ohio Valley Converting, Ltd.*, 4th Dist. Washington No. 93CA34, 1995 WL 329571, *14 (May 26, 1995).

{¶13}   Here, because appellant failed to request findings of fact and conclusions of law relating to the trial court's decision in accordance with Civ.R. 52, the trial court was not required to detail the findings to support its conclusion. If appellant desired more detailed findings, he could have requested findings of fact and conclusions of law under Civ.R. 52. His failure to do so means that he cannot now complain that the court erred in this regard. In any event, as we explain below, we believe that the record contains evidence to support the trial court's decision.

{¶14}   Accordingly, we overrule appellant's first assignment of error.

### B. Competent, Credible Evidence Supports the Competency Determination

{¶15}   In his second assignment of error, appellant contends that the trial court's finding that appellee is not incompetent is against the manifest weight of the evidence.

{¶16}   R.C. 2111.02(A) provides:

If found necessary, a probate court on its own motion or on application by any interested party shall appoint, subject to divisions (C) and (D) of this section and to section 2109.21 and division (B) of section 2111.121 of the Revised Code, a guardian of the person, the estate, or both, of a minor or incompetent, provided the person for whom the guardian is to be appointed is a resident of the county or has a legal settlement in the county. If the person for whom the guardian is to be appointed is an adult, the person must be a qualified respondent as described in section 2112.21 of the Revised Code and have the opportunity to have the assistance of counsel in the proceeding for the appointment of that guardian. An interested party includes, but is not limited to, a person nominated in a durable power of attorney under section 1337.24 of the Revised Code or in a writing as described in division (A) of section 2111.121 of the Revised Code. * * *

{¶17}  The first step in the guardianship process is to determine whether the applicant has shown, by clear and convincing evidence, that the prospective ward is incompetent (i.e. so mentally impaired as a result of mental illness or disability that she is incapable of taking proper care of herself or her property). *In re Larkin,* 4th Dist. Pike No. 09CA791, 2009–Ohio–5014, ¶ 17; R.C. 2111.02(C)(3); R.C. 2111.01(D). The Ohio Supreme Court held:

Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

{¶18}   " 'The standard of review for weight of the evidence issues, even where the burden of proof is "clear and convincing" retains its focus upon the existence of "some competent, credible evidence." ' " *Larkin* at ¶ 18, quoting *In re Jordan,* 4th Dist. Pike No. 08CA773, 2008–Ohio–4385, ¶ 9, in turn quoting *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Thus, even under the clear and convincing standard, appellate review is deferential. *Larkin* at ¶ 18. An appellate court should not reverse a trial court's decision as being against the manifest weight of the evidence if some competent, credible evidence supports the decision. *Id.,* citing *In re Jordan* at ¶ 9. "This standard of review is highly deferential and even 'some' evidence is sufficient to sustain the judgment and prevent a reversal." *Eddy v. Eddy,* 4th Dist. Washington No. 01CA20, 2002–Ohio–4345, ¶ 27.

{¶19}   If a court finds that a prospective ward is incompetent, the court must still determine whether to impose the guardianship (i.e., whether it is "necessary."). *Larkin* at ¶ 19; *see also* R.C. 2111.02(A). Appellate courts review decisions of this nature under the abuse of discretion standard. *Larkin* at ¶ 19; *In re Guardianship of P.D.,* 4th Dist. Washington No. 08CA5, 2009–Ohio–3113, ¶ 16. Generally, an abuse of discretion implies that a court's attitude is unreasonable, arbitrary, or unconscionable. *Larkin* at ¶ 19; *Frick v. Howell*, 4th Dist. Highland No. 14CA19, 2015-Ohio-3639, ¶ 33. When applying this standard, a reviewing court may not merely substitute its judgment for that of the trial court. *Larkin* at ¶ 19; *In re Jane Doe 1,* 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991), citing *Berk v. Matthews,* 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

{¶20}   In the case sub judice, the guardianship hearing produced the following evidence. Appellant offered the testimony of appellee, upon cross-examination, as his sole evidence that appellee is incompetent and a guardianship is necessary. Appellee testified that he and Dicklich

have been friends for approximately 17 years and that she had taken care of him as if they were family. Appellee testified that he once loaned Dicklich $40,000 but that she had repaid him. Appellee also testified that he had gifted her $2,000 so she could visit her daughter and granddaughter in the state of Washington. Furthermore, appellee testified that he gave Dicklich his vehicle so that she could visit him at the assisted living facility and take him out to eat on occasion, especially since he could no longer drive himself. He indicated that he wished to change his will to leave a quarter of his estate to Dicklich and the remainder to his three children because Dicklich had done a lot for him over the years. He also indicated that he created a revocable trust to help manage his financial affairs and day-to-day bill paying, although it is unclear from the record whether the trust had been funded at the time of the hearing. Appellee did testify, however, that he wanted Peoples Bank to administer the trust and not Dicklich or his children. On cross-examination, appellee denied that Dicklich was financially abusing him and reiterated that the only money he ever gave her was the $40,000 loan, which was repaid with interest, and the $2,000 gift.

{¶21}  It is notable that appellant did not offer the testimony of Tilley; and Tilley's report was never submitted as evidence at the hearing.

{¶22}  On the other hand, appellee offered the testimony of several witnesses at the hearing, including the testimony of Joseph Kennell, Ph.D. Kennell testified that he is a licensed psychologist and that he conducted a competency evaluation of appellee in conjunction with the guardianship application. Kennell testified that appellee expressed understanding of the purpose of the assessment, was alert throughout, made good eye contact, was responsive and coherent, and showed good endurance for his age. Kennell testified that appellee's responses were logical and relevant to whatever they were talking about. Kennell described appellee as "pretty sharp"

and opined that he was not incompetent as defined under Ohio law. He also testified that in his opinion appellee was not unduly influenced. On cross-examination, Kennell clarified that appellee may need some assistance in handling his day-to-day finances, but that he is competent to decide how and who should manage those day-to-day finances. Kennell also testified on cross-examination that appellee expressed a desire that his children and Dicklich share his estate equally upon his death; and that appellee noted he had given Dicklich money in the past. A report prepared by Kennell was introduced into evidence without objection from appellant.

{¶23} Zimmerman, the trial court investigator, also testified at the hearing during appellee's presentation of his case. Zimmerman testified that upon receiving the court's order to investigate the circumstances of the proposed ward, she met with appellee on two occasions and also talked with the staff of the assisted living facility where appellee lives. Zimmerman testified that appellee was well aware of her role and why they were meeting and opposed the guardianship proceedings. Zimmerman indicated that appellee was aware of present circumstances, appeared to comprehend her questions, and gave thoughtful responses. She also observed that appellee was able to perform everyday functions. When pressed about her recommendation that a limited-guardianship be established, Zimmerman indicated that "[appellee] needs to be a part of those [financial] decisions. He was, with my interaction with him, very on the mark; very alert and able to discuss with me his financial standings." Zimmerman's report was also entered into evidence without objection from appellant.

{¶24} James Addison, Esq., was the next witness offered by the appellee. Addison testified that he is a licensed attorney and that he was hired by appellee to include Dicklich in his testamentary documents. After discussing the matter with appellee, Addison drafted a revocable trust and pour-over will which leaves appellee's assets to Dicklich and appellee's three children

equally. According to Addison, the documents were executed by appellee. Addison testified that appellee was able to clearly express his wishes and desires and that he seemed to comprehend what was said to him. Addison testified further that while Dicklich accompanied appellee to the office visits; she stepped out when the documents were executed and that it did not appear that Dicklich was directing appellee in any way. According to Addison, appellee appeared competent and capable when he executed the trust and will.

{¶25} Robert Kirkbride, a local businessman and entrepreneur also testified at the hearing. According to Kirkbride, he met privately with appellee, and upon appellee's request, in February 2014. Kirkbride testified that appellee wished to meet to discuss some "real life issues" and to discuss the possibility of Kirkbride becoming his financial power of attorney. Kirkbride testified that appellee was coherent, and was able to clearly converse and comprehend at the meeting. Kirkbride testified that he declined appellee's offer to become his financial power of attorney, but recommended to appellee that he contact Attorney Addison. Kirkbride noted that appellee "made perfect sense to me that day" and he felt that appellee was competent to make decisions regarding his financial affairs.

{¶26} Mindy Geese, the executive director of the assisted living facility where appellee resides, was the last witness to testify at the hearing. Geese testified that she has had daily interactions with appellee since he moved to the facility in early 2014. Geese noted that appellee is "fairly independent". According to Geese, appellee comes and goes to the dining room as he pleases, chooses his own meals, is able to call the staff by name, is alert and oriented, is able to dress himself, and picks which activities to attend on his own. Geese testified that she has never seen appellee in an incoherent state and that appellee is able to comprehend what is said to him. Geese further testified that she and appellee have discussed Dicklich, that he has no concerns

regarding Dicklich, that he's "perfectly happy with Betty", and that "[i]t would be devastating if she was not there for him."

{¶27} Here, the only expert evidence on the issue of incompetency came from Kennell. Kennell's testimony and report unequivocally conclude that appellee is not incapable of taking proper care of himself or his property. We understand that Tilley's report filed with the application for guardianship reached a different conclusion; but Tilley did not testify at the hearing; and the report was never offered as evidence at the hearing. Moreover, the testimony from the other witnesses reinforces Kennell's conclusion. All the additional witnesses agreed that appellee appeared aware of present circumstances, was able to comprehend questions, gave thoughtful responses, and generally appeared on the mark and coherent.

{¶28} Furthermore, when evaluating the weight of the evidence, the trier of fact is owed great deference, because the trier of fact is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and to use those observations to weigh the credibility of the testimony. *Larkin, supra*, at ¶ 18; *In re Jordan, supra*, at ¶ 9; *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Here, in addition to hearing and viewing the expert testimony and the testimony of the lay witnesses, the trial court was also able to observe appellee on the stand. Appellee was able to justify recent changes to his financial affairs; and the trial court apparently found him to be credible and capable of making those decisions.

{¶29} It appears from the record evidence that appellee is a well-adjusted, coherent, and capable 97 year old man. Therefore, some competent, credible evidence supports the trial court's finding that appellee is not so mentally impaired as a result of a mental illness or disability that

he is incapable of taking proper care of himself or his property. Accordingly, we overrule

appellant's second assignment of error.

## IV. Conclusion

{¶30}   Based upon the foregoing reasons, we hereby overrule appellant's assignments of

error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Probate Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court


By: _____
        Marie Hoover
        Presiding Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**