This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Kenneth Schoepf, appeals the judgment of the Lorain County Court of Common Pleas denying his motion to modify spousal support. We affirm.
 I.
On September 21, 1998, the trial court granted Appellant and Appellee, Mary Schoepf, a divorce and ordered Appellant to pay spousal support. According to the separation agreement, Appellant agreed to pay spousal support in the amount of $1,825.00 per month for twenty months. The separation agreement stated that Appellant's "obligation to pay said support shall immediately and absolutely cease and terminate upon * * * [Appellee's] cohabitation with a [sic] unrelated male[.]"
The Appellant moved the trial court to "withdraw" his spousal support payments on January 6, 2000.[1] After a hearing on the motion, the trial court denied Appellant's motion and found that Appellee and her boyfriend, Raymond Allen Jupina ("Jupina") were not cohabiting. In addition, the trial court held "[Appellant] through Depositions and financial documentation prior to Court hearing and by his own testimony was aware that no exchange of financial support between Mr. Jupina and [Appellee] existed."
Appellant filed a timely appeal with this court.
 II.
On appeal, Appellant lists six assignments of error:
 1. The Court abused its discretion by ignoring the manifest weight of the evidence of the Plaintiff ex-wife's [cohabitation] with an unrelated male, to wit: Ray Jupina.
 2. The Court misstated the facts of the relationship in that Plaintiff and Ray Jupina had established a relationship prior to the filing of the Complaint for Divorce, maintained said relationship during the [pendancy] of the divorce, and continued said relationship after the divorce during the period that Plaintiff was receiving spousal support from Appellant.
 3. Further, the Court ignored the fraud that was put over on the Court and Appellant by Plaintiff who negotiated spousal support while acting in bad faith concerning her relationship with Ray Jupina.
 4. Appellant alleges that enough evidence was presented to the court in the form of testimony (and video tape) that Ray Jupina spent most of the months of December and January at Plaintiff's residence and frequently spent overnight [sic].
 5. Appellant alleges that the court erred in granting Plaintiff's Motion to Quash the subpoenas that Appellant had served on Ray Jupina and his parents, with whom Ray Jupina allegedly lives, thereby limiting the evidence that Appellant could acquire on the subject of where Ray Jupina lived, banked, etc. which would have further supported Appellant's allegation that Plaintiff and Ray Jupina were [cohabiting].
 6. Appellant alleges that the Court ignored the significant "other factors including behavior and intent of parties" which are cited in In Re Dissolution of Marriage of Briggs (1998), 129 Ohio App.3d 346 and the statutory definition of [cohabitation.]
The assignments of error will be consolidated and discussed out of sequence for ease of discussion.
 III.
In his fifth assignment of error, Appellant argues that the trial court abused its discretion by granting Appellee's motions to quash subpoenas for the depositions of Jupina and his parents. We disagree.
Appellant served subpoenas on Jupina and his parents.[2] On March 13, 2000, Appellee's attorney moved the trial court to quash the subpoenas and for a protective order. See Civ.R. 26(C). Prior to the hearing on Apellant's motion to suspend spousal support, Appellant filed a motion to compel Jupina to appear for a deposition. The hearing proceeded as scheduled and the trial court did not permit Appellant to depose Jupina or his parents.
We note that Appellant did not make a record of his objection to proceed with the hearing on the motion to modify spousal support without having an opportunity to depose Jupina. At the hearing, the trial court asked Appellant if he was prepared to go forward on the motion and Appellant's attorney responded "[y]es, we are." It is settled law that "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Childs (1968),14 Ohio St.2d 56, paragraph three of the syllabus. An appellate court need not address errors that are assigned and briefed but have not been raised in the trial court. Merillat v. Fulton Cty. Bd. of Commrs. (1991), 73 Ohio App.3d 459, 463; see also State v. Awan (1986),22 Ohio St.3d 120, syllabus.
Accordingly, Appellant's fifth assignment of error is overruled.
 IV.
In his first, second, third, fourth and sixth assignments of error, Appellant argues that the trial court abused its discretion because the manifest weight of the evidence supported a finding that Appellee and Jupina were cohabiting.[3] We disagree.
When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment.]
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
A reviewing court can reverse a judgment upon an assignment of error involving the weight of the evidence only when the verdict is "`so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.'" Ohio Edison Co. v. Romano (Apr. 23, 1997), Summit App. No. 18034, unreported, at 5, quoting Royer v. Bd. Of Edn. (1977),51 Ohio App.2d 17, 20 (Attribution omitted.) "The appellate court must be guided by a presumption of correctness and cannot substitute its judgment for that of the trial court on findings of fact that are supported by some evidence." Pawlus v. Bartrug (1996),109 Ohio App.3d 796, 799.
This court has held that a trial court should determine that issue of cohabitation by looking at "three principal factors: `(1) an actual living together; (2) of sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses.'" In reDissolution of the Marriage of Briggs (1998), 129 Ohio App.3d 346,348-349, quoting Moell v. Moell (1994), 98 Ohio App.3d 748, 752
(Attribution omitted.) Furthermore, "[w]ithout a showing of financial support, merely living with an unrelated member of the opposite sex is insufficient, in and of itself, to require termination of spousal support." Briggs, 129 Ohio App.3d at 349, citing Thomas v. Thomas
(1991), 76 Ohio App.3d 482, 485.
At the hearing, Appellee testified that she and Jupina began dating in January 1999. Appellee lives in a house located in Avon Lake, Ohio and Jupina resides with his parents. Appellee and Jupina do not pool their incomes and do not share a joint checking or savings account. Appellee stated that she is solely responsible for her bills and she does not pay any of Jupina's bills. Jupina gave her earrings on Valentines day and presents at Christmas but has never given her gifts of money. On two occasions, she wrote checks to Jupina to reimburse him for repairs made to her car.
Appellee also testified that Jupina has spent the night with her at her house. Twice while Appellee was away on business trips, Jupina stayed at her house to care for her two dogs.
Jupina testified he is dating Appellee. They have taken trips together including a weekend of fly- fishing and a weekend in Coshocton. He stated that he is responsible for his own bills and has not provided Appellee with any money to meet her financial obligations.
Appellant testified that he started noticing Jupina's truck at Appellant's house when he would pass her street on the way to church. He believed that Jupina was living with Appellee. To confirm his suspicions, he videotaped Jupina's truck at Appellee's house eleven times in December 1999 and six times in January 2000.
At the hearing, the trial court asked Appellant "[d]o you have anything today, any knowledge or any evidence, indicating [Jupina's] financially contributing to your ex-wife or her home, her income?" Appellant answered "[n]o."
We find that the trial court's determination that Appellee was not cohabiting with Jupina was not against the manifest weight of the evidence. Appellant failed to present any evidence that Appellee and Jupina were living together for a sustained duration, sharing financial and day-to-day expenses. See Briggs, 129 Ohio App.3d at 348-349. Because Appellant failed to present evidence to support his assertion of cohabitation, the trial court did not abuse its discretion in denying Appellant's motion to modify spousal support. Accordingly, Appellant's first, second, third, fourth and sixth assignments of error are overruled.
 V.
On appeal, Appellee moved this court for sanctions against Appellant including the costs of attorney fees. This court denies Appellee's motion. Having overruled Appellant's assignments of error this court affirms the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
____________________________ WILLIAM G. BATCHELDER
CARR, J., WHITMORE, J. CONCUR.
[1] The record reflects that on March 2, 2000, defense counsel entered her notice of appearance and filed an amended motion to modify spousal support.
[2] We note that the original papers and journal entries of the trial court do not list the issuance of subpoenas to Jupina or his parents. However, Appellee states in the motion to quash the subpoenas that Jupina and his parents were served subpoenas to appear for depositions on March 8, 2000 and March 10, 2000.
[3] We note that the Appellant's brief was poorly organized and contained no references to the record. See App.R. 12(A)(2) and 16(A)(7); Loc.R. 7(A)(6). In his second and third assignments of error, Appellant asserts that Appellee and Jupina's relationship existed before the divorce and that Appellee committed a fraud upon the court regarding the issuance of spousal support. As this is a motion to modify spousal support, this court will confine its review to arguments relating to the time period after the September 21, 1998 divorce.